IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARDENT LABS, INC. D/B/A COMULATE,<br><br>                       Plaintiff,<br><br>      v.<br><br>APPLIED SYSTEMS, INC.,<br><br>                      Defendant. | Case No. 1:26-cv-00591 |

## PLAINTIFF COMULATE'S RESPONSE TO DEFENDANT APPLIED'S MOTION FOR LEAVE TO FILE A SUR-REPLY

### I.    The Court Should Deny Leave and Strike the Proposed Sur-Reply

Comulate's Reply addressed (i) defenses Applied raised in its Opposition; (ii) documents that Applied intentionally withheld from discovery before Comulate filed its opening brief, which were in Applied's possession long before it filed its Opposition; and (iii) customer contracts and statements from customers that were treated at length—and quoted in—Comulate's opening brief, all of which Applied had days before it filed its Opposition. Comulate did not raise new arguments or new theories; rather it responded to Applied's Opposition.

Having failed to carry its burden of proof for its purported "justification" defense, Applied now asks to file a Sur-Reply. Much like its Opposition, Applied's Sur-Reply fails to rebut the sole remaining issue that matters: causation. Instead, Applied raises brand-new arguments that it failed to—but could have—raised in its Opposition, and rehashes ones it already made in the Opposition. These are not proper purposes for a sur-reply. *See Daker v. State Farm Fire & Cas. Co.*, 2021 WL 2877171, at *3 (C.D. Ill. July 8, 2021) (denying motion to file sur-reply where reply "merely

addressed Plaintiff's enforceability, promissory estoppel, equitable estoppel, and equitable tolling arguments" raised in opposition); *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1165 (C.D. Ill. 2022) (denying motion to file sur-reply where sur-reply "advances a new argument that could have previously been raised"). And even if Applied's Sur-Reply served a proper purpose, its arguments are legally deficient, so the Court need not accept Applied's Sur-Reply. *Molton, Allen & Williams, LLC v. Cont'l Cas. Ins. Co.*, 2010 WL 780353, at *6 n.1 (N.D. Ill. Mar. 3, 2010) (declining to consider undeveloped argument made in sur-reply).

Accordingly, the Court should deny Applied's motion for leave, and the proposed Sur-Reply should be stricken.

## II. Applied's New Arguments and Evidence Do Not Alter the Outcome: A Status Quo Preliminary Injunction Should Issue

Even if the Court were to consider the Sur-Reply, Applied's arguments and new evidentiary submissions do not advance the ball for Applied.

### A. Applied's Contract "Justification" Arguments Fails

With respect to Applied's contract "justification" arguments, Applied's time to submit evidence (the various contracts attached as Exhibits B-L of the proposed Sur-Reply) in support of its affirmative defense of "justification" was at the time it submitted its Opposition; not now via a Sur-Reply. For this reason alone, the evidence should be disregarded. But the contracts—and rehashed arguments from Applied—do not rehabilitate Applied's failed contract "justification" defense.

Applied's "sequential" argument (at 5) ignores the relationship between §§ 5.1, 5.2, and 5.7 of the SSDK. As explained in Comulate's Reply (at 12-14), Applied repeatedly and expressly approved Comulate as an "Authorized Integration" for joint customers under §§ 5.1 and 5.2 of the SSDK. Applied does not dispute this; nor could it. Instead, Applied's Sur-Reply (at 5) claims that

2

this contractual authorization merely approved the "customer's permitted workflow," and that a subsequent Acknowledgement Form was required to implement the integration. This not only ignores Applied's well-documented and undisputed course of performance waiving any such requirement, it also ignores that § 5.7—by its terms—only applies to third party integrations "***other than as prescribed in this Schedule [SDK]***." Sur-Reply, Ex. G § 5.7; Reply 11. By expressly approving Comulate as an Authorized Integration, customers' use of Comulate was "prescribed" in the SSDK.[1]

Applied's Sur-Reply's reliance (at 7) on the so-called "Acknowledgement Form's Competitor Bar" is also unavailing. Applied's interpretation to categorically bar Comulate as a putative "competitor" is internally inconsistent—it suggests that every customer would breach its SSDK immediately upon execution, when those agreements were entered for the express purpose of facilitating Comulate integration. Sur-Reply 7. Moreover, the form was not executed by Comulate, and Applied brings forward no evidence demonstrating any third party ever signed that form. And even if Comulate had signed the form, it still wouldn't give Applied license to invoke contractual provisions in an illegal and anticompetitive manner. *See, e.g.*, Reply 10.

The same is true of Applied's termination for convenience argument. *See* Sur-Reply 6-7. As a general contract principle, termination for convenience clauses are not a shield against liability for bad faith or fraud. *See Greer Props., Inc. v. LaSalle Nat. Bank*, 874 F.2d 457, 461 (7th Cir. 1989) (defendants acted in bad faith even though they "were vested with broad discretion to terminate the contract"). And, as explained in Comulate's Reply (at 10), monopolists cannot launder anticompetitive acts through contracts to render them permissible. *See, e.g., In re Dealer*

---

[1] Applied does not respond to Comulate's waiver or condition precedent arguments (Reply 12-14)—each of which defeat Applied's "justification" defense.

*Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 957-59, 965 (N.D. Ill. 2018) (denying motion to dismiss monopolization claims where complaint adequately pleaded that defendants' contractual restrictions with vendors sought to exclude competitors and monopolize market). This is true for termination for convenience provisions as well: they cannot be weaponized for unlawful, anticompetitive purposes. *See, e.g. Adolph Coors Co. v. FTC*, 497 F.2d 1178, 1189 (10th Cir. 1974) (a company may not use the threat of invoking "reasonable" contractual provisions that are not inherently anticompetitive "to force any unlawful conduct"); *CinemaCloudWorks, Inc. v. Comscore, Inc.*, 2026 WL 84020, at *13 (C.D. Cal. Jan. 6, 2026) ("Comscore's reliance on mere contractual enforcement is unpersuasive, as the FAC alleges more than the termination of contractual rights alone, encompassing conduct that is wrongful in combination with anticompetitive motives."); *United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 615 (S.D.N.Y. 2025) (sustaining complaint that alleged Visa "insisted on the right to terminate for convenience to punish any efforts to compete with Visa"); *California v. Chevron Corp.*, 872 F.2d 1410, 1414 (9th Cir. 1989) ("[T]he alleged anticompetitive price fixing circumvented the good faith expectations of the parties and converted an otherwise proper act like price posting into an exercise of bad faith.").

**B. Applied's New PBC Evidence Confirms Pretext**

Applied's new arguments and new cherry-picked evidence—which was *withheld and not produced* by Applied during expedited discovery[2]—regarding Applied's pretextual reliance on PBC should be disregarded. Comulate has long argued that the PBC sandbox account is a pretext for Applied's anticompetitive scheme, *see, e, g.*, Compl. ¶ 254; Am. Compl. ¶ 8 ("Applied's later attempts to justify its campaign by reference to the PBC Consulting Inc. ('PBC') sandbox account

---

[2] These documents were not produced despite the presence of agreed-upon search terms ("Comulate," "Katz," "PHOEN10," and "PBC") and custodians (Graham Blackwell, Chase Petrey, and Trevor Bunker).

4

are pretextual."). Despite bearing the burden of proof on its "justification" defense, Applied chose not to address the fact that Applied's conduct was pretextual in its Opposition. Applied has no basis to now raise these new arguments and self-selected documents for the first time on Sur-Reply. They have been waived for present purposes. *See Walton v. EOS CCA*, 2017 WL 9531997, at \*14 (S.D. Ind. July 24, 2017), *report and recommendation adopted*, 2017 WL 4324739 (S.D. Ind. Sept. 29, 2017), *aff'd*, 885 F.3d 1024 (7th Cir. 2018) ("A sur-reply … cannot raise a new argument to which the opposing party did not have an opportunity to respond."); *Jones v. Reynolds*, 2022 WL 1121384 at \*3 (W.D. Wis. Apr. 14, 2022) (party forfeited arguments by failing to raise them on opposition).

Regardless, this new evidence (Exs. A and M), which represents a self-serving and incomplete record, does not suggest Applied's use of PBC was anything other than pretext. Nor does the evidence respond to Comulate's argument that Comulate's interest in stability of its contracts receive greater weight than Applied's purported interest in "platform security" as a matter of law. Reply at 3.

*First*, Applied's new evidence shows that Brian Giometti asked others to  Blackwell told CEO Taylor Rhodes that . Sur-Reply Ex. A; Baker Ex. 6. Specifically, Blackwell informed Rhodes of the ongoing effort on October 16 at 7:48 AM. Baker Ex. 6. That same day, at 12:46 PM, wrote Blackwell: Baker Ex. 14. After broke the news to Applied that it had selected Comulate, and well after Giometti had been placed on Blackwell's Giometti sent the email Applied relies on asking Applied personnel to . Ex. A (October 16, 1:21 p.m.). The following day, Blackwell wrote Rains:

5



████████████████████████████████████████████████████████

████████████████████████████████████████████ Suppl. Ex. 1.

*Second*, Blackwell's October 17 directive to ████████████████ with respect to

Comulate (Suppl. Ex. 1) ████████████████████████████████

████████████████████████████████████████████ Sur-Reply

Ex. M; *see also* Reply 3-4. And Giometti stated with respect to the high SDK call volume, ████

████████████████████████████████████████████

████████████████████, and never articulated any of the reverse engineering or trade secret

concerns Applied has trotted out in this litigation.[3] Sur-Reply Ex. A. Applied asks the Court to

believe quite a coincidence: Applied detected PBC activity on Applied Epic in the same 24 hours

its President's 30-month campaign to keep ████ from Comulate failed.

*Third*, Applied's selective enforcement confirms the commercial motive. Applied delayed

████ SOW, internally described as a ████████████████ Baker Ex. 10, and filed suit on

November 21 rather than deliver it. Three days earlier, on November 18, Applied approved a

Comulate integration for a different customer. Sur-Reply at 3. A platform-security concern would

have produced wholesale action; Applied's was ████-specific.[4]

---

[3] The ████████████████████████████████████ reflected in
Sur-reply Ex. A is also inconsistent with Applied's FAC allegations that Applied's *"internal
systems* recently flagged PBC's use of Epic as suspicious." FAC ¶ 95. The casual tone in the
email, instructing ████████████████████████████████████████
████, is also inconsistent with Applied's FAC's characterization of PBC as "so brazen as to defy
belief." FAC ¶ 100.

[4] Applied's ████-specific playbook confirms the commercial motive. An internal
document titled ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Baker Ex. 7.

*Fourth*, Applied's characterization of the October 17 directive as a "sales conversation" (at 3) is lawyer *ipse dixit* and should be disregarded. The same is true of Applied's lawyer's attempted rebuttal (at 4) of the August 2025 customer report. Neither Blackwell (who oversees Giometti) nor Raines (who is married to Giometti), nor any other Applied witness, put in a sworn affidavit backing up these lawyer statements. Although Comulate has not had an opportunity to depose either Raines or Blackwell on these issues (or about who their frequent use of nicknames refers to), the limited evidence available to Comulate to date overwhelmingly establishes that the October 17 shut-off directive was just that: a commercial directive. *See, e.g.*, Baker Ex. 7.

*Fifth*, Applied's discovery conduct is notable. Comulate asked Applied to collect Slack on day three of expedited discovery; Applied ignored the request for nearly two weeks and, on the evening of its March 19 production deadline, disclosed that it had not collected Slack from any custodian—despite Slack collection being automatable. Dkt. # 86 at 3 & Exs. 1-3. Applied then faulted Comulate for introducing new exhibits in Reply that Applied had held throughout and withheld from Comulate. And Applied came forward with Exhibits A and M for the *first* time on Sur-Reply, without the surrounding record—no reply to ███████████████ and no follow-up analysis or executive correspondence to the email memo. Applied hand-selected two exhibits, which frame the inquiry around ██████ and, in the context of the surrounding record, strongly supports the notion that the PBC sandbox account is pretextual.

*     *     *

Comulate respectfully requests that the Court enter Comulate's proposed injunction, which, as Comulate's Reply noted and Applied's Sur-Reply does not dispute, Applied's own counsel has characterized as merely "maintaining the status quo."

7

Respectfully submitted,

Ardent Labs, Inc., d/b/a Comulate

Date: April 17, 2026

MILLER SHAKMAN LEVINE &
FELDMAN LLP
Zachary Freeman
Brian Kerwin
30 West Monroe Street, Suite 1900
Chicago, IL 60603
Telephone: 312-263-3700
zfreeman@millershakman.com
bkerwin@millershakman.com

COHEN MILSTEIN & TOLL PLLC
Michael Eisenkraft (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
meisenkraft@cohenmilstein.com

Nathaniel Regenold (admitted *pro hac vice*)
1100 New York Avenue NW #800
Washington, DC 20005
(202) 408-4600
nregenold@cohenmilstein.com

By: /s/ *Rollo Baker*
ELSBERG BAKER & MARURI PLLC
Rollo Baker (admitted *pro hac vice*)
Silpa Maruri (admitted *pro hac vice*)
Jared Ruocco (admitted *pro hac vice*)
Brian Campbell (admitted *pro hac vice*)
Chase Shelton (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10118
(212) 597-2600
rbaker@elsberglaw.com
smaruri@elsberglaw.com
jruocco@elsberglaw.com
bcampbell@elsberglaw.com
cshelton@elsberglaw.com

Attorneys for Ardent Labs, Inc., d/b/a
Comulate