**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARDENT LABS, INC., d/b/a COMULATE | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 26-cv-00591 |
| APPLIED SYSTEMS, INC., | ) ) ) | Hon. Manish S. Shah |
| Defendant. | ) ) ) | |

**APPLIED'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
SUR-REPLY IN OPPOSITION TO COMULATE'S RENEWED
MOTION FOR A PRELIMINARY INJUNCTION**

The Court should grant Applied's motion for leave to file its surreply. D.I. 121. On March 5, 2026, the Court asked whether customer departures were "attributable to tortious interference." D.I. 75 at 7:13-16. Comulate's renewed motion (D.I. 100) did not identify any tortious act or explain how any specific conduct by Applied satisfied the elements of tortious interference. Comulate's reply (D.I. 120) then raised new arguments and evidence for the first time: antitrust theories the Court already declined to reach (D.I. 75 at 6:25-7:3); a rotating set of contract theories about why Applied cannot enforce its own agreements; and 47 new exhibits to support a pretext argument. Applied should be allowed to respond through its surreply. Comulate's response (D.I. 127) to Applied's motion for leave to file a surreply raises three arguments. None justifies denying leave.

*First*, Comulate says that Applied should have raised its contract arguments in its opposition. D.I. 127 at 2. Applied did raise its justification defense in its opposition, citing the contractual basis for its conduct. D.I. 110 at 18-22. Comulate's reply then introduced arguments it had never raised before, including waiver, estoppel, the relationship among SDK provisions, non-terminability, and others. D.I. 120 at 8-15. Applied's surreply explains why each fails on the contract language and the record. D.I. 123 at 4-7. Comulate's reply also claimed, without basis, that the contract Applied cited was "not representative." D.I. 120 at 2, 10-11. Applied's surreply responds to those new arguments and attaches the actual customer contracts (Exs. B-L) that Comulate said were missing.[1]

---

[1] Comulate's reply also fell back on antitrust claims as a basis for defeating justification. D.I. 120 at 10. But Comulate did not seek a preliminary injunction on antitrust grounds in its renewed motion. This Court found no likelihood of antitrust liability on March 5, 2026 (D.I. 75 at 6:25-7:3). And Comulate has made no effort whatsoever to establish an antitrust claim through expert analysis, market definition, or evidence of monopoly power.

*Second*, Comulate says that Applied's Exhibits A and M were withheld from discovery and confirm pretext. D.I. 127 at 5-6. But they are internal Applied documents—an email flagging PBC's anomalous SDK traffic and a memo documenting Applied's fraud investigation—that fell outside the Court's expedited discovery order, which covered communications with mutual customers about Comulate, not Applied's internal investigation. D.I. 75 at 7:17-23. Comulate's reply offered a pretext theory based on 47 new exhibits. Applied responded to that new evidence with evidence of its own. The documents show that Applied's fraud investigation began before the October 17 Slack exchange Comulate calls a "shutoff directive," and that Applied approved a new Comulate integration five weeks later. D.I. 123 at 2-4; Baker Suppl. Ex. 41.[2]

*Third*, Comulate criticizes Applied's discovery conduct. D.I. 127 at 7. At Comulate's insistence, the Court authorized expedited, one-sided discovery from Applied limited to document request No. 3 and interrogatory No. 3. D.I. 75 at 7:17-23. Applied produced every responsive document in its possession by the March 19 deadline. When Comulate asked Applied also to collect Slack material on top of what the Court had ordered, Applied did not object. Instead, Applied engaged the third-party platform to help with collection of materials under its control. Applied produced more than 150 Slack conversations from four custodians. Applied does not argue that Comulate should have been barred from citing those Slack documents in its reply—Applied asks only to respond. The Slack production came later in the two-week window because third-party collections take time, not because Applied dragged its feet.

Ultimately, Comulate's complaint in this suit is that Applied enforced its customer contracts after catching Comulate committing fraud and running unauthorized bots through

---

[2] Comulate claims that Applied "does not dispute" that it planned to shut off Comulate before discovering PBC. D.I. 127 at 2, 5. Applied has repeatedly disputed this. D.I. 123 at 4 n.1; D.I. 110 at 20 n.5.

customer accounts. That is not tortious. Comulate never had its own right to access Applied's platform—it accessed the platform indirectly, through Applied's customers, whose SDK license agreements give Applied the right to terminate on sixty days' notice for any reason. Applied gave Comulate repeated chances to get its own access subject to reasonable contractual restrictions. Comulate refused and instead created a sham entity to take what it would not get honestly. Comulate has never denied any of this: not the fake entity, not the ten million unauthorized SDK calls, not the bots running through customer seats restricted to named employees, and not using the fruits of that fraud to build a competing product. *See* D.I. 9 (Katz Decl.) ¶¶ 31-32, 41, 48, 54; D.I. 41-2 (Peterlin Decl.) ¶¶ 17-18.[3] What Comulate calls irreparable harm is the consequence of its own conduct.

The injunction Comulate seeks would reward that conduct. It would give Comulate by court order what it could never get by contract—unconditional access to Applied's platform—while gutting the termination rights in more than sixty of Applied's customer contracts and forcing Applied to support a competitor that admittedly misused its system. Applied has independent contracts with more than sixty customers giving it the right to end SDK access for any reason. Here, Applied had good reason, given Comulate's admitted fraud and misuse of customer accounts. That Comulate claims the termination of SDK access would affect its own contracts or prospective advantage does not elevate Comulate's rights above Applied's. *See Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, 2018 WL 6696607, at *13 (N.D. Ill. Dec. 20, 2018) (Shah, J.)

---

[3] Katz admitted that PBC "is not a real insurance agency, and it is not a real entity" (Katz Decl. ¶ 31) and was "used … for developing and demonstrating features" (*id.* ¶¶ 32, 48); that Comulate made over 11.4 million SDK calls through the PBC account (*id.* ¶ 54); and that Comulate accessed customers' Epic instances through user seats (*id.* ¶ 41). Applied's forensic analysis confirmed that Comulate ran automated bots through those same seats. Peterlin Decl. ¶¶ 17-18.

3

(explaining privilege exists where the defendant acts to protect an interest of equal or greater value than the plaintiff's contractual rights).

The Court should grant Applied's motion for leave to file a surreply and deny the renewed preliminary injunction.[4]

Dated: April 20, 2026

<div style="margin-left:50%">

Respectfully submitted,

_/s/ Sam S. Stake_

Jonathan C. Bunge (Ill. Bar #6202603)
Nathan Hamstra (Ill. Bar # 6286325)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
jonathanbunge@quinnemanuel.com
nathanhamstra@quinnemanuel.com

Sam S. Stake (_pro hac vice_)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
samstake@quinnemanuel.com

Aaron H. Perahia (_pro hac vice_)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
aaronperahia@quinnemanuel.com

Sami H. Rashid (_pro hac vice_)
David LeRay (_pro hac vice_)

</div>

---

[4] Comulate claims that its proposed injunction "maintain[s] the status quo." D.I. 127 at 7. This Court has already said otherwise: "[a] mandatory injunction requiring Applied to guarantee access … is not preservation of the status quo." D.I. 75 at 6:18-22.

4

Salvadore J. Diaz (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
salvadorediaz@quinnemanuel.com

*Attorneys for Defendant Applied Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I filed the foregoing document with the United States District Court for the Northern District of Illinois using the CM/ECF system and caused it to be served on all registered participants via the notice of electronic filing.

*/s/ Sam S. Stake*