**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARDENT LABS, INC., d/b/a COMULATE,<br>Plaintiff,<br>v.<br>APPLIED SYSTEMS, INC.,<br>Defendant. | Case No. 26-cv-00591<br>District Judge Manish S. Shah |

**PLAINTIFF COMULATE'S MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS OPPOSITION TO APPLIED'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Ardent Labs, Inc., d/b/a Comulate ("Comulate"), by and through its undersigned counsel, respectfully moves this Court for entry of an order granting Comulate leave to file this Notice of Supplemental Authority in Support of Its Opposition to Applied's Motion to Dismiss the Amended Complaint (the "Notice of Supplemental Authority"). Comulate sought the consent of Defendant Applied Systems, Inc. ("Applied") to file this motion. Applied declined to consent without the opportunity to review the motion in advance. In support of this motion, Comulate states as follows:

1. Comulate filed the First Amended Complaint on March 13, 2026. Dkt. 79. Briefing on Applied's Motion To Dismiss the Amended Complaint was completed on May 21, 2026.

2. The Ninth Circuit recently issued a decision in *Simon & Simon, PC v. Align Technology, Inc.*, 2026 WL 2980631 (9th Cir. Oct. 5, 2026) (per curiam) ("Opinion" or "Op.") (attached hereto as Exhibit A) – which relies on the reasoning of the Seventh Circuit in *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020), and was decided at summary judgment, a

more demanding procedural posture than the motion-to-dismiss stage – that undermines a number of arguments asserted in Applied's motion to dismiss (Dkt. 102, 105) and reply (Dkt. 146).

3. In *Align*, the defendant (Align) manufactured transparent dental aligners ("Invisalign") as well as a digital dental scanner used in producing aligners. Align entered into an agreement with another scanner manufacturer, 3Shape, whose scanners were "designed to be an open system that can be used to order aligners from different manufacturers." Op. at 8. After a "short-lived" partnership, Align terminated its agreement with 3Shape and refused to accept 3Shape's digital scans. *Id.* Two classes of plaintiffs brought suit claiming that Align had violated Section 2 of the Sherman Act through its "unilateral termination of Align's interoperability agreement" and other conduct. *Id.* at 9. The district court granted summary judgment to Align, crediting Align's argument that "it terminated interoperability not for anticompetitive reasons but because continuing interoperability could have weakened its position in . . . patent litigation" that Align was pursuing against 3Shape. *Id.* at 10.

4. The Ninth Circuit reversed with analysis that is relevant here. *First*, the court rejected the argument – pressed by Applied in its motion – that, to make out a claim of unlawful refusal to deal, a plaintiff must satisfy as a rigid set of criteria each of the three factors derived from *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). *Compare* Dkt. 146 at 5 (asserting that a refusal-to-deal claim "requires a prior, longstanding, direct, bilateral, and profitable course of dealing"), *with* Op. at 14-15 (holding that the factors derived from *Aspen Skiing* – including the existence of a "voluntary and profitable course of dealing" – "do not impose a rigid checklist"). The Ninth Circuit relied on *Viamedia* for that proposition, holding that while "[t]he *Aspen Skiing* factors are a starting point" for the inquiry into whether a challenged refusal to deal is anticompetitive, "courts should consider [those factors] flexibly, on a case-by-case basis,

focusing on the particular facts disclosed by the record." Op. at 14 (cleaned up). This holding supports the arguments set out in Comulate's opposition to the motion to dismiss. *See* Dkt. 135 at 15-22 (alleging facts sufficient to establish each of the *Aspen Skiing* factors); *see also* Op. at 20 n.3 ("[T]he calculation of procompetitive benefits net of anticompetitive harms does not easily lend itself to a *pleading* standard.") (quoting *Viamedia*, 951 F.3d at 462).

5. *Second*, the Ninth Circuit made clear, contrary to Applied's argument that a prior course of dealing must be "longstanding," *see* Dkt. 146 at 5, that "there is no minimum length of time or number of agreements for an existing business relationship to qualify as a course of dealing," Op. at 24-25 (rejecting Align's argument that its agreement with 3Shape was "one-off" and "short-term" and therefore not a "course of dealing"). *See* Dkt. 79, ¶¶ 86, 102-105, 109, 111, 174 (alleging facts sufficient to establish a profitable course of dealing that Applied terminated).

6. *Third*, *Align* rejects the argument – again, one that Applied makes here – that a defendant's termination of a course of dealing is categorically lawful so long as the defendant proffers a legitimate business justification. *Cf.* Dkt. 105 at 11. Rather, as the Ninth Circuit held, even where a defendant has "met its burden" of proffering a legitimate business justification for its decision to terminate interoperability – in that case, "to strengthen [Align's] position in patent litigation" – a plaintiff must still be afforded the opportunity to show that: (1) the termination of the course of dealing does not genuinely protect the defendant's asserted interest; (2) the asserted business justification is pretextual; or (3) the harm to competition from the refusal to deal outweighs any procompetitive benefit. *See* Op. at 15-16, 26. And the plaintiff may make that showing "by pointing to direct or circumstantial evidence, including evidence of the defendant's anticompetitive intent." *Id.* at 15 (citing *Aspen Skiing*, 472 U.S. at 602-03); *compare* Op. at 30 ("[T]he timing of the patent litigation also supports an inference that it was not Align's true

motive."), *with* Am. Compl. ¶ 207 (Applied's representatives telling customers, two months *before* Applied's purported discovery of the PBC account, that Comulate's access would be cut off); *compare* Op. at 30 (statement by Align CFO: "[s]top litigation, but don't reinstate interoperability"), *with* Am. Compl. ¶ 214 (Applied informing customers that "[e]ven if Comulate wins, we still won't be allowing them to integrate with Epic"). In sum, as in *Align*, "a reasonable factfinder could conclude that [Applied] used [its asserted justification] as an excuse to terminate interoperability because it wanted to thwart threats" from a competitor. Op. 31.

WHEREFORE, because *Align* will aid in the Court's consideration of Applied's pending motion to dismiss Comulate's Amended Complaint, Comulate respectfully requests that the Court grant leave to file this Notice of Supplemental Authority.

Respectfully submitted,

Dated: November 5, 2026

/s/ *Michael N. Nemelka*
Michael N. Nemelka (*pro hac vice*)
Aaron M. Panner (*pro hac vice*)
Derek T. Ho (Bar No. 488609)
Lillian V. Smith (*pro hac vice* pending)
Daniel S. Severson (*pro hac vice*)
Justin D. Cole* (*pro hac vice*)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, PLLC
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dho@kellogghansen.com
lsmith@kellogghansen.com
dseverson@kellogghansen.com
jcole@kellogghansen.com

Zachary Freeman
Brian Kerwin
MILLER SHAKMAN LEVINE &
FELDMAN LLP
30 West Monroe Street, Suite 1900
Chicago, IL 60603
(312) 263-3700
zfreeman@millershakman.com
bkerwin@millershakman.com

*Attorneys for Plaintiff Ardent Labs, Inc., d/b/a Comulate*

* Not admitted in the District of Columbia; practicing under the supervision of members of the Firm.

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 5, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Michael N. Nemelka*
Michael N. Nemelka